In The United States District Court
For The Southern District Of Texas
Houston Division

United States Courts
Southern District of Texas
FILED

JUL 1 1 2003

Michael N. Milby, Clerk

Arcade Joseph Comeaux, Jr.
TDCJ-ID # 841331, Plaintiff

vs.

Darrell Sutton, Mark Biscamp, Robert Jenkins Jr., Austin Mc Comb, Timothy Simmons, Bradley Hutchison, Darrell Luker, Sammy Wright, L. Liggins, Micheal Velasquez, Robert Quada, Demetric Phipps, Lisa Harrison, Jennifer Ragan, Martha Blackburn, Edna Larpentuer, Patti Revel, Devon Caballero, Gail Mac Cartney, Randall Healy, Ms (Nurse) Banks, Rick Thaler, Rollins, Robinson, Frank Hoke, Denise Box, John Doe-1, John Doe-2, John or Jane Doe-3, John Doe-4, John Doe-5, Dr. John Doe, Janie Cockrell, Gary Johnson, (unkn) Gibson, Texas Depart-Criminal Justice-Institutional Division-(TDCJ-ID), University of Texas Medical Branch and Correc-Tional Managed Health Care-~~(CMHC)~~ (UTMB/CMHC)

Defendants

Case No. _____

# H-03 -2555

Civil Action

---

CIVIL RIGHTS COMPLAINT PURSUANT TO 42 USC § 1983 AND TITLE II OF ADA, 42 USC § 12132 AND 29 USC § 794 OF RA.

---

This is a civil action under the American with Disabilities Act (ADA) Title II, 42 USC § 12132, The Rehabilitation Act of 1973 -(RA), 29 USC § 794, and Pursuant 42 USC § 1983 to Redress the Deprivation, under the Color of State

# ISSUES CAUSE OF ACTION
## TABLE OF CONTENTS

PAGE

Plaintiff's First Cause of Action — — — — — — 10

Plaintiff's Second Cause of Action — — — — — — 10

Plaintiff's Third Cause of Action — — — — — 22

Plaintiff's Fouth Cause of Action — — — — — 25

Plaintiff's Fifth Cause of Action — — — — — — 27

Plaintiff's Sixth Cause of Action — — — — — 28

Plaintiff's Seventh Cause of Action — — — — — — 30

Plaintiff's Eighth Cause of Action — — — — — — 32

Plaintiff's Nineth Cause of Action — — — — — 32

Relief Requested — — — — — — — — 37

Jury Request — — — — — — — — 40

Declaration — — — — — — — — — 40

NOTE: PLEASE LET IT BE NOTED THAT THIS COMPLAINT IS DRAFTED BY UNSKILL INMATES WHO TRYING TO HELP PLAINTIFF WHO IS PARALYZED AND CAN NOT WRIT DUE TO HIS DISABILITY.

PLEASE! CONSTRUE LIBERALLY! THANK YOU!

( i )  (BEHIND PAGE 1.)

LAW. FOR VIOLATION OF HIS CONSTITUTIONAL RIGHTS
AND SEEKING MONEY DAMAGES, DECLARATORY JUDGEMENT,
INJUNCTIVE RELIEF AND ATTORNEY FEES.   JURY DEMAND.

## I. JURISDICTION

1. THIS IS A CIVIL RIGHTS ACTION UNDER 42 USC § 1983.
THIS COURT HAS JURISDICTION UNDER 28 USC § 1343.

## II. PREVIOUS LAWSUITS

2. FILING DATE : OCTOBER 30, 2000
   PLAINTIFF : ARCADE JOSEPH COMEAUX, JR. # TDCJ 841331
   DEFENDANTS : MACKWANI, (FIRST NAME UNKNOWN) ET. AL.
   COURT/DISTRICT : FEDERAL SOUTHERN DISTRICT OF TEXAS
   DOCKET NUMBER : H - 00 - 3812 - CV
   JUDGE : Hon. JUDGE NANCY ATLAS
   DISPOSITION : PENDING

3. FILING DATE : APRIL 30, 2001
   PLAINTIFF : ARCADE JOSEPH COMEAUX, JR. # TDCJ 841331
   DEFENDANTS : RICK THALER, ET. AL.
   COURT/DISTRICT : FEDERAL SOUTHERN DISTRICT OF TEXAS
   DOCKET NUMBER : H - 01 - 1411 - CV
   JUDGE : Hon. JUDGE RAINEY
   DISPOSITION : CONSOLIDATED UNDER H-00-3812-CV, PENDING

4. FILING DATE : DECEMBER 10, 2001
   PLAINTIFF : ARCADE JOSEPH COMEAUX, JR. # 841331
   DEFENDANTS : , JANIE COCKRELL, ET. AL.

COURT/DISTRICT: FEDERAL SOUTHERN DISTRICT OF TEXAS
DOCKET NUMBER: H-01-4264-CV
JUDGE: Hon. JUDGE SIM LAKE
DISPOSITION: DISMISSED W/O PREJUDICE, APPEAL PENDING

5.   FILE DATE: JANUARY, 2002, (DID NOT FILE THIS SUIT.)
     PLAINTIFF: N/A
     DEFENDANTS: N/A
     COURT/DISTRICT: FEDERAL SOUTHERN DISTRICT OF TEXAS
     DOCKET NUMBER: H-02-0058
     JUDGE: Hon. JUDGE HARMON
     DISPOSITION: CLERICAL FILING ERROR - DISMISSED W/O PREJUDICE

6.   FILING DATE: _____
     PLAINTIFF: ARCADE JOSEPH COMEAUX, JR., #TDCJ 841331
     DEFENDANTS: MARK BISCAMP, ET. AL.,
     COURT/DISTRICT: FEDERAL SOUTHERN DISTRICT OF TEXAS
     DOCKET NUMBER: H-02-4144
     JUDGE: Hon. JUDGE HITTNER
     DISPOSITION: VOLUNTARY DISMISSAL W/O PREJUDICE,

7.   FILING DATE: JULY 24, 2002
     PLAINTIFF: ARCADE JOSEPH COMEAUX, JR., #841331
     DEFENDANTS: TEXAS DEPARTMENT OF CRIMINAL JUSTICE -
                  INSTITUTIONAL DIVISION

PG-3

COURT/DISTRICT: STATE, 12TH JUDICIAL DISTRICT, WALKER, COUNTY TEXAS

DOCKET NUMBER: 21,738

JUDGE: Hon. JUDGE ERWIN ERNST, JR (RETIRED)

DISPOSITION: DISMISS WITH PREJUDICE, APPEAL PENDING

---

## III. PLACE OF PRESENT CONFINEMENT

8. ESTELLE HIGH SECURITY UNIT, 264 F.M. 3478, HUNTSVILLE, TEXAS, 77320-3322

---

## IV. GRIEVANCE EXHAUSTION

9. PLANTIFF, HAS EXHAUSTED BOTH STEPS OF THE GRIEVANCE PROCESS. THE ORIGINAL WAS FILED WITH STATE LAWSUIT. A COPY CAN BE OBTAINED FROM TDCJ-ID FILE. PLAIN-HAVE NO WAY TO OBTAIN COPIES.

---

## V. PARTIES TO THIS SUIT

10. PLAINTIFF: ARCADE JOSEPH COMEAUX, JR. #841331,
   ADDRESS: ESTELLE H.S. UNIT, 264 FM 3478, HUNTSVILLE, TEXAS, 77320-3322

11. DEFENDANTS-DARRELL SUTTON, IS A SERGEANT AT THE ESTELLE H.S. UNIT, FOR THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE-INSTITUTIONAL DIVISION — (TDCJ-ID).

12. DEFENDANT - MARK BISCAMP, IS A LIEUTENANT FOR TDCJ-ID AT THE ESTELLE H.S. UNIT.

PG - 4

13. DEFENDANT- <u>Robert Jenkins, Jr.</u>, is a Lieutenant For TDCJ-ID at the Estelle H.S. Unit.

14. DEFENDANT- <u>Austin McComb</u>, is the Major For TDCJ-ID, at the Estelle H.S. Unit.

15. DEFENDANT- <u>Timothy Simmons</u>, is an Assistant-Warden For TDCJ-ID at the Estelle H.S. Unit.

16. DEFENDANT- <u>Bradley Hutchison</u>, is a Captain For TDCJ-ID at the Estelle High Security Unit.

17. DEFENDANT- <u>Darrell Luker</u>, is the Disciplinary Captain For TDCJ-ID at the Estelle H.S. Unit.

18. DEFENDANT - <u>Sammy Wright</u>, is the Inmates Counsel Substitute For TDCJ-ID at the Estelle H.S. Unit

19. DEFENDANT- <u>L. Liggins</u>, is the Inmates Counsel Substitute For TDCJ-ID, at the Estelle H.S. Unit.

20. DEFENDANT- <u>Michael Velasquez</u>, Retired Grievance Coordinator Investorgator For TDCJ-ID, at the Estelle H.S. Unit.

21. DEFENDANT- <u>Robert Quada</u>, is the Law Library Supervisor For TDCJ-ID, at the Estelle H.S. Unit.

22. DEFENDANT- <u>Demetric Phipps</u>, is the Law Library Officer Clerk, For TDCJ-ID, at the Estelle H.S. Unit.

23. DEFENDANT- <u>Lisa Harrison</u>, is the Law Library Officer Clerk, For TDCJ-ID, at the Estelle H.S. Unit.

24. DEFENDANT- <u>Jennifer Ragan</u>, is the Property-Room Officer For TDCJ-ID, at the Estelle H.S. Unit.

25. DEFENDANT- <u>MARTHA BLACKBURN</u>, IS A MAILROOM SUPERVISOR FOR TDCJ-ID, AT THE ESTELLE H.S. UNIT.

26. DEFENDANT- <u>EDNA LARPENTUER</u>, IS A MAILROOM STAFF FOR TDCJ-ID, AT THE ESTELLE H.S. UNIT.

27. DEFENDANT- <u>PATTI REVEL</u>, IS A LVN-NURSE FOR UNIVERSITY OF TEXAS MEDICAL BRANCH/CORRECTIONAL MANAGED HEALTH CARE - (UTMB/CMHC), AT THE ESTELLE H.S. UNIT.

28. DEFENDANT- <u>DEVON CABALLERO</u>, IS A LVN-NURSE FOR UTMB/CMHC, AT THE ESTELLE H.S. UNIT

29. DEFENDANT- <u>GAIL MAC CARTNEY</u>, IS AN RN-NURSE FOR UTMB/CMHC, AT THE ESTELLE H.S. UNIT.

31. DEFENDANT- <u>(Unkn F_ST) BANK</u>, IS A NURSE FOR UTMB/CMHC, AT THE ESTELLE H.S. UNIT.

32. DEFENDANT- <u>RICK THALER</u>, IS THE SENIOR WARDEN FOR TDCJ-ID, AT THE ESTELLE H.S. UNIT, AND GRIEVANCE CORDINATOR

33. DEFENDANT- <u>DENISE BOX</u>, IS THE HEALTH ADMINI-STRATOR, FOR UTMB/CMHC AT THE ESTELLE H.S. UNIT.

34. DEFENDANT- <u>Dr. JOHN DOE</u>, IS THE HEALTH CARE PHYSICIAN FOR UTMB/CMHC AT THE ESTELLE H.S. UNIT.

35. DEFENDANT- <u>RANDALL HEALY</u>, IS THE PHYSICIAN ASSISTANT- (P.A.), FOR UTMB/CMHC, AT THE ESTELLE H.S. UNIT.

36. DEFENDANT- <u>JOHN DOE-*1</u>, IS A TRANSPORTING OFFICER FOR TDCJ-ID, AT HUNTSVILLE ADMINISTRATION.

37. DEFENDANT- <u>JOHN DOE-*2</u>, IS A TRANSPORTING

PG - 6

OFFICER FOR TDCJ-ID, AT HUNTSVILLE, ADMINISTRATION.

38. DEFENDANT- JANE OR JOHN DOE-3, IS DIRECTOR OF UTMB/CMHC.

39. DEFENDANT- JOHN DOE-4, IS THE AD-SEG COMMITTEE MEMBERS FOR TDCJ-ID, AT THE ESTELLE HIGH SECURITY UNIT.

40. DEFENDAT- JOHN DOE-5, IS THE SERGEANT AT THE CENTRAL REGIONAL MEDICAL FACILITY-(CRMF), FOR TDCJ-ID.

41. DEFENDANT- ROLLIN ROBINSON, REGIONAL GRIEVANCE STEP-2, DIS-CIPLINARY APPEAL COORDINATOR, FOR TDCJ-ID AT HUNTSVILLE ADMINISTRATION.

42. FRANK HOKE-(DEFENDANT) IS THE ACCESS TO COURTS, ADMINISTRATOR FOR TDCJ-ID CENTRAL REGION, AT HUNTSVILLE-ADMINISTRATOR.

43. DEFENDANT- JANIE COCKRELL, IS THE DIRECTOR OF TDCJ-ID AND POLICY MAKER, AT HUNTSVILLE ADMINISTRATION.

44. DEFENDANT- GARY JOHNSON, IS THE REGIONAL DIRECTOR FOR THE CENTRAL REGION UNITS FOR TDCJ-ID.

45. DEFENDANT - THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE-INSTITUTIONAL DIVISION-(TDCJ-ID)

46. DEFENDANT- THE UNIVERSITY OF TEXAS MEDICAL BRANCH-AND CORRECTIONAL MANAGED HEALTH CARE- UTMB/CMHC.

## ADDRESS OF SERVICE

47. DEFENDANTS #11 THRU #37 AND #39, ADDRESS OF SERVICE IS: ESTELLE HIGH SECURITY UNIT-, 264 FM 3478, HUNTSVILLE, TEXAS, 77320-3322.

48. DEFENDANTS- #40 THRU #45, ADDRESS OF SERVICE IS: P.O. BOX 99, HUNTSVILLE, TEXAS 77342-0099.

49. DEFENDANTS #38 AND #46, ADDRESS OF SERVICES IS: UTMB/CMHC, P.O. BOX 48, SUBSTATION-1, GALVESTON, TEXAS, 77555

50. DEFENDANTS THALER, HOKE, BOX, COCKRELL, JANE OR JOHN DOE-3, AND JOHNSON ARE POLICY MAKERS AND GRIEVANCES COORDINATORS, EACH ARE SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES.

51. ALL OTHER DEFENDANTS EACH IS SUED ONLY IN HIS/HER INDIVIDUAL

CAPACITY.  * ONLY FOR EVENTS, INJURIES, PAINS AND CONSTITU-
TIONAL VIOLATION INFLICTED ON THE PLAINTIFF BETWEEN, FEBRUARY 11,
2002 UNTIL APRIL 15, 2002.

52.49. AT ALL TIMES MENTIONED IN THIS COMPLAINT EACH
DEFENDANT ACTED UNDER THE COLOR OF TEXAS STATE LAW.

## VI. STATEMENT OF CLAIM:

53 50. ON FEBRUARY 11, 2002, PLAINTIFF, A HANDICAP WHEELCHAIR
CONFINED INMATE WITH PARALYSIS TO HIS LEFT-SIDE AND WEAKNESS
ON THE RIGHT-SIDE. HE WAS REMOVED FROM HIS FIRST FLOOR
CELL D-102, AND WAS SEARCHED, THEN HANDCUFFED BY LT. BISCAMP,
SGT. SUTTON, SGT. JENKINS, JR. AND TWO ESCORTING OFFICERS (ALL
DEFENDANTS), TO TAKE HIM TO FORT BEND COUNTY, FOR COURT.

54. INSTEAD OF BEING TAKEN TO VAN FOR TRANSPORT. HE WAS TAKEN
TO THE FIRST FLOOR ELEVATOR. WHILE IN ELEVATOR BEING TAKEN TO THE
SECOND FLOOR, BISCAMP (A DEFENDANT IN ANOTHER LAWSUIT) THREATEN PLAINTIFF TO
DROP HIS LAWSUIT AND STOP FILING GRIEVANCE ON STAFF.

55. MAJ. MC COMB, CAPT. HUTCHISON AND GAIL MAC CARTNEY (NURSE),
WAS PRESENT ON THE SECOND FLOOR. ASSISTANCE, A SHOWER AND A
CHANGE OF CLOTHES WAS OFFER. PLAINTIFF, ACCEPTED BUT STATED, "THAT
HE WISH THE JUDGE AND HIS LAWYER COULD SEE HIS CONDITION / TREATMENT."

56. IRRATED BY THE STATEMENT. LT. BISCAMP, ASKED, MAC CARTNEY,
"FOR SISSORS." TELLING PLAINTIFF "IF HE MOVE HE WILL STAB HIS ASS",
AND WITHOUT REASON OR PROVOCATION - BEGAN TO HIT PLAINTIFF WITH HIS
ELBOW AND FOREARM (WHILE STAND BEHIND WHEELCHAIR) ABOUT THE NECK AND HEAD;
SCRAPING HIS NECK WITH SISSORS, WHILE HE WAS UNRESISTING, UNPRO-
VOKING, HANDCUFFED AND CONFINED IN HIS WHEELCHAIR. EVERYONE
WATCHED BUT DID NOT STOP THE ASSAULT OR TRIED TO PROTECT PLAINTIFF FROM
HARM.

57 57. CAPT. HUTCHISON, SUGGESTED A VIDEO CAMERA AND OPERATOR
TO MC COMB. BISCAMP, STOP HITTING PLAINTIFF. MC COMB SAID "NO".

THEN Mc Comb Told Biscamp, "I don't care if you cut them off or pull them off, just hurry up and change them, these guys got to go."

58. Biscamp, began to hit plaintiff again more violently with a force that cause a pop in his neck and numbing shocking pain and fear of his life and well-being.

59. 56. Jenkins Told Biscamp to step back He know what to do. He grabbed plaintiff shirt collar and arm and attempt to swing plaintiff head first into the cement wall. Only because of the wheelchair position was he unsuccessfull after several yanking tries. The force from the jerking against wheelchair caused bruises and pain to the ribs and skin. No one intervene.

60. Irrated at unsuccessful attempts in front of his superiors Jenkins and Sutton lifted plaintiff up out of wheelchair to chest-high. Jenkins, again tried to slam plaintiff head first onto the concrete floor, but Sutton's loss-grib caused an uneven "slam". Because of plaintiff's paralysis and being handcuffed left him with no defense to break the fall, the slam was loud enough to bring the warden Simmon out some 100 feet away from a back office and watch the assult occur.

61. 58. Plaintiff absorbed the full force of the slam with Jenkins and Sutton's weighty added and the handcuff beared into the chest that knock wind out of him unable to breathe. A pain of its own.

62. Jenkins and Sutton, with closed fist about the head and body. Kneeing him in the back, pulling cuffs arm in opposite direction, and Sutton (the biggest) place his knee and body weight on side of plaintiff head and face forcing it against concrete floor causing friction burns. During the beating Biscamp kneed plaintiff in back and stabbed with the sissors in the arm. Then started to cut plaintiff pants off him but dull at the shirt.

63. 62. Mc Comb, then said "Just uncuff him and pull it off so they can go." Then asked MacCartney, to say doctor ordered.

64. 59. AFTER, CLOTHES WAS PUT ON, LT. BISCAMP PUT ON HAND LEGS CUFF SO TIGHT CIRCULATION WAS CUT OFF, AFTER COMPLAINING AND ASKING FOR SLACK, IT WAS IGNORED, AND LEFT TIGHT FOR (6) HOURS, SUTTON ASKED PLAINTIFF, "NOW, ARE YOU GOING TO SUE ME TOO?".

## CLAIMS

## FIRST CAUSE OF ACTION

65. 60. DEFENDANTS LT. BISCAMP, SGT SUTTON, SGT. JENKINS (NOW LIEUTENANT), MAJOR McCOMB, AND CAPTAIN HUTCHISON, INTENTIONALLY, KNOWINGLY, WITH MALICIOUSLY AND SADISTIC INTENT USED OR AUTHORIZED THE UNNECESSARY AND EXCESSIVE USE OF FORCE ON PLAINTIFF IN BAD FAITH FOR THE VERY PURPOSE TO CAUSE HARM FOR EXERCISING HIS ACCESS TO COURTS RIGHTS, AND NOT TO MAINTAIN SECURITY OR RESTORE DISCIPLINE, CAUSING THE UNNECESSARY AND WANTON INFLICTION OF PAIN. VIOLATING HIS HIS EIGHT AND FOURTEENTH AMENDMENT RIGHTS TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT AND DENIED DUE PROCESS OF LAW, WHEN:

66. A). HE WAS BEATEN, KNEED AND SLAMMED WHILE HANDCUFFED, PARALYZED AND UNRESISTING IN AN UNPROVOKED ASSAULT.

67. B). HE WAS STABBED WITH SISSORS.

68. C). HE SUFFERED INJURY FROM THE FORCE ATTEMP TO BE SLAM INTO THE CEMENT WALL.

69. D). FORCED CLOTHES OFF BY CUTTING THEM OFF.

70. 65. E) HAND AND LEG CUFFS WAS CLOSED TIGHT CUTTING CIRCULATION.

## SECOND CAUSE OF ACTION

71. 66. DEFENDANTS MAJ. McCOMB, CAPT. HUTCHINSON, WARDEN SIMMONS, JOHN-DOE 1 AND JOHN DOE-2, FAIL TO PROTECT PLAINTIFF FROM THE UNWARRANT AND UNLAWFUL ASSAULT INFLICTION OF INJURIES AND PAINS IN THE UNNECESSARY USE OF FORCE, SUBJECTING HIM TO CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF HIS EIGHT AND FOURTEENTH AMENDMENT RIGHS, WHEN:

72. A). THE DEFENDANTS, STOOD BY IDLE WATCHED THE ASSAULT AND UNNECESSARY FORCE DEVELOPE AND FAIL TO INTERVENE.

73.68. B). THE DEFENDANTS, WATCHED LT. BISCAMP, IN THE FIRST ASSAULT OF HITTING THE UNPROVOKING, UNRESISTING, PARALYZED HANDCUFFED PLAINTIFF WITHOUT CAUSE AND FAIL TO INTERVENE TO PROTECT HIM.

74.69. C). THE DEFENDANTS, STOOD IDLE WATCHING THE SECOND ASSAULT INFLICTED ON PLAINTIFF BY BISCAMP.

75.70. D). THE DEFENDANTS, STOOD IDLE AND WATCH JENKINS, ATTEMPTING TO SLAM PLAINTIFF HEAD IN THE WALL.

76. E). THE DEFENDANTS, STOOD IDLE AND WATCH SUTTON AND JENKINS, SLAM, KNEED, AND BEAT PLAINTIFF WHILE HANDCUFFED, UNRESISTING, WITHOUT PROVOKING AND KNEW PLAINTIFF COULD NOT PROTECT HIMSELF AND THE ACTS OF FELLOW WORKERS WAS AGAINST THE LAW AND VIOLATED PLAINTIFF CONSTITUTIONAL RIGHTS.

77.72. F). McCOMB AND HUTCHINSON, INTENTIONALLY AND MALICIOUSLY, DELAYED THE USE OF PROTECTIVE VIDEO CAMERA, TO ALLOW THE ASSAULT TO BE UNFETTERED.

78. G). THE DEFENDANTS, INTENTIONALLY, KNOWINGLY, AND MALICIOUSLY DISREGARDED PROTECTIVE, AND SAFTY PROCEDURE POLICY OF USE OF FORCE.

## STATEMENT OF CLAIM (II)

79. On FEBRUARY 11, 2002, AFTER A MAJOR USE OF FORCE ON THE PLAINTIFF AND RECEIVING INJURIES TO HIS BACK, HEAD, NECK, ARM, LEGS, RIBS AND BODY, McCOMB, ALLOWED A VIDEO CAMERA ON PLAINTIFF.

80.75. McCOMB, THEN SPOKE TO MACCARTNEY PRIVATELY. SOON AFTER, MACCARTNEY, EXAMINE PLAINTIFF FOR INJURIES, DISREGARDED HIS COMPLAINTS OF BACK AND NECK PAINS, AND STAB WOUND, LABEL EVERYTHING ABRASIONS AFTER CLEANING. EXAMINATION WAS DID FULL CLOTHES, SITTING IN WHEELCHAIR WITH A PATS SEARCH. SHE CLEARED HIM FOR TRANSPORT WITH NOTHING FOR PAIN AND A BAND-AIDE FOR STAB-WOUND.

81. THE BAND-AIDE WAS SO INADEQUATE FOR THE STAB WOUND IT SATURATE WITH BLOOD BEFORE REACH TRANSPORT VAN AND FELL OFF.

82. UPON RETURN TO THE UNIT, HE REALIZED HE HAD PASSED OUT IN THE VAN. HIS CLOTHES WAS BLOODY BUT SHIRT-SHORT SLEEVE SATURATED.

83. THE RECEIVING OFFICER BECAME ALARM AND TAKEN PLAINTIFF DIRECT TO THE INFIRMARY, SECOND SHIFT NURSE BANKS WAS THERE, HE INFORM HER THAT PLAINTIFF HAD BLEEDING AND NEED MEDICAL CARE.

84. MS BANKS TRIED TO CIRCUMVENT TREATMENT SAYING "ITS OLD." THE OFFICE SAID "NO IT ISN'T" AND SHOWED FRESH BLOOD ON SHIRT AND WOUND STILL DRIPPING BLOOD. SHE THEN CONCEDED THAT SHE DID NOT WANT TO GET INVOLVED OR CONFLICT WITH WHAT HER SUPERVISOR WROTE OR TREATMENT GAVE, THAT ALL SHE CAN GIVE IS A BAND-ADDE. SHE GAVE BAND-AIDE AND SENT TO CELL. THE BAND-AIDE WAS SATURATED AND FELL BEFORE REACHING CELL.

85. PLAINTIFF WAS PLACE IN BARE CELL WITHOUT BEDDING, MATTRESS OR PROPERTY. THE CELL WAS SO COLD HIS EARS, HANDS, AND FEET HURT (ONE SIDE). THE AIR-CONDITION WAS ON, CREATING A DANGEROUS EVIROMENT FOR PLAINTIFF WHO PARALYSIS PREVENT ADEQUATE BLOOD CIRCULATION ON ITS OWN, TO KEEP THE BODY WARM, PLUS HE HAVE CHRONIC ASTHMA IN WHICH EXTREME COLD COULD SUBJECT HIM TO FLU OR PNEUMONIA, FASTER THAN A NORMAL PERSON.

86. HE EXAMINE HIS WOUNDS AND FOUND THE STAB WOUND WAS SERIOUSLY CUT TO THE EXTENT THAT THE TIP OF FINGER COULD FIT IN THE WOUND AND TOUCH THE BONE. THAT TINY BONE FRAGMENT EXIT THE WOUND AND THE OPENING OF THE WOUND CAUSE BLOOD TO SKIT SEVERAL INCHES WITH PULSE BEAT. DARK PURPLE AND BURGUNDY BRUISED SIDE, KNOT ON BACK OF NECK WITH SURFACE SCRATCHES AND CUTS, KNOTS ON THE HEAD, SHIN, AND ARM, DEEP SCRAPS WITH OPEN RAW MEAT BLEEDING, SEVERE PAIN IN NECK AND BACK. HE NOTIFY WING OFFICER ALLEN, WHO NOTIFIED SGT. NIXON, WHO DISREGARDED HIS MEDICAL NEED.

87. NURSE CABALLERO, AFTER SPEAKING TO AN INMATE ON THE WING, PASSING PLAINTIFF CELL ON THE WAY OUT PLAINTIFF ALERTED HER OF HIS CONDITION AND NEED FOR MEDICAL CARE. SHE USE PROFANITY TOWARDS HIM A LEFY.

88. THE FOLLOWING DAY, PLAINTIFF FELT AS IF BEATEN WITH A BASEBALL

bat. His arm swollen, elbow knotted the size of a handball, neck could not move as if a crook, any flexible movement sent sharp piercing pain in back with a constant pain without movement, headache, and was sick from not give blood presure meds. He notified office who said Nurse said, "That plaintiff was already seen the day before don't bother her."

89. Plaintiff further learn, that a retaliatory cover-up and punishment beganned against him with immediated punishment on access to courts and to distract attention from the illegal use of force.

90. Plaintiff was placed on all property restriction, including legal property that had nothing whatsoever to do with the incident. No hearing.

91. Plaintiff was place on restriction of all law library books access without notice, charge or hearing for an imaginary damaged book.

92. He was dropped to a more restricted level without notice or hearing.

93. He was denied all bedding, without a penalogical interest.

94. Sgt. Sutton, wrote a false disciplinary report #20020152797 for "failure to submit to a strip search", knowing all inmate's are search in cell or living area per policy, searches are not done in middle of hallway where incident took place, inmates can't strip search with with handcuffs on, that a fail to strip search would not cause for immediate physical force without camera, that a search had been done already, that the plaintiff had no reason to be on second floor at the time and that he did not give an order, nor were strip-search part of any subject matter on second floor.

95. Capt. Hutchison, okayed the processing of the false report after seeing and knowing exactly what happen, knowing Sgt. Sutton report was false. He further, sat on a unit ad seg committee on the very charges he okayed for disciplinary, without allowing plaintiff to attend or present any evidence in his defense or did he give notice, found plaintiff guilty (with Warden Simmon part of committee) prior to the disciplinary hearing and found guilty on the charges, then backdated the punishment of the committee to the arbitrary punishing date to cover the immediate punishment given.

96. On or about 2-12-03, Capt. Luker (the Disciplinary Hearing Officer), were at Plaintiff door. Plaintiff ask him for his legal property at which Lt. Bicamp came and ask what Plaintiff want? Then explained exact what happen, including about his lawsuit with nothing about a strip-search, giving Capt. full knowledge of what occurred. Luker said "and the S.O.B. want us to help.

97. Mr Wright on 2-13-02, served the report. Plaintiff asked to attend the hearing, had documents to presesent in his behalf, asked for witness Warden Simmon, Maj. McComb, Hutchison, McCartney, and Capt. Luker, for statement and explained why and how the report was false and evidence that support it was false, that he want to the reveiw of the video that shows innocence and had questions for accusing officers. Mr Wright stop writing and said he had to check on something left and never return.

98. Because it is a well-know practice, under the circumstances and with Wrighty representing the inmate, the inmate is denied to attend the hearing, stating "he refused". Plaintiff verbally and by request clearly informed Mr. Wright and Luker, he wanted to attend.

99. On 2-18-03, Sgt. Sutton and Biscamp excorting Disciplinary (unusual) hearing. Look at Plaintiff, "laughed saying, You refused, I heard you refuse" Biscamp laughed pat him on back and said "Good Call". Lets than a minute, the officer call and told Wright Plaintiff said he want to attend and did not refuse. Mr Wright, said, they had already ran the case and found him guilty, and refuse to assist with appeal.

100. Sutton came to Plaintiff cell said it aint over and that he will see to it Plaintiff never get his level.

101. Sutton ~~threw~~ threw away Plaintiff personal bought #300.⁰⁰ wheelchair cushion Egg-create cushion

102. Ms Ragan, refuse to return Plaintiff legal and writing supplies, as favor to Jenkins and Biscamp she further refuse to give confiscation, inventory or property papers back.

PG- 14.

103. 98. RAGAN, THREATEN TO DESTROY AND GIVE AWAY PLAINTIFF PROPERTY AND LEGAL MATERIAL. SGT. GROOM TOLD PLAINTIFF TO KEEP PAPERWORK BECAUSE HE BELIEVE RAGAN THROW AWAY MOST OF HIS PROPERTY.

104. 99. PLAINTIFF RECEIVED AN INTERMEDIA LEVEL, A FEW DAYS LATER SUTTON AND JENKINS, ASK PLAINTIFF IS HE GOING TO DROP LAWSUIT. HE HE SAID "NO". SUTTON WROTE ANOTHER FALSE CASE FOR "THREATENING AN OFFICER" #200202 50567.

105. AGAIN ALL LEGAL MATERIAL WAS TAKEN, SOME THROWED AWAY, AND MOVE TO RESTRICTED CELL AND PUNISHMENT WITHOUT NOTICE, ~~AGAIN~~ HEARING OR CHARGE. AGAIN AT A LATER TIME AD-SEG COMMITTEE COVER UP AND FOUND HIM GUILTY PRIOR TO HEARING, FOR THE DISCIPLINARY REPORT.

106. ON JUNE 5, 2002, LUKER HELD A BIAS HEARING. PLAINTIFF, PROVIDED EVIDENCE OF INNOCENCE THROUGH RECORDS AND RECORD PERSONNEL TESTIMONY AND ACCUSING OFFICER'S STATEMENT, THAT LUKER ADMIT CONFLICT. PLAINTIFF PROVED BEYOND DOUBT ON TAPE THE RETALIATORY CASE WAS FALSE AND AD SEG COMMITTEE MEMBERS CONSPIRED AND PLANNED THE FALSE REPORT.

107. SEVERAL TIME THE HEARING WAS STOP. PLAINTIFF PUT OUT THE HEARING SO LUKER COULD COACH TESTIMONY IN EFFORT TO ASSIST THE FALSE REPORT SUCCESS. HOWEVER THE EVIDENCE WAS UNDISPUTE. SO HE STOP THE HEARING, SENT PLAINTIFF TO CELL. HIMSELF, SAID HE WENT TALK TO LT. BUTCHER (HAD NO PART OR KNOWLEDGE PERSONAL), OUTSIDE THE HEARING. CALL PLAINTIFF BACK APPROX. AN HOUR LATER. TESTIFIED FOR BUTCHER OF UNSUSTAINUATE STATEMENT AND ALLEGATION, THAT HAD NOTHING TO DO WITH CASE, STOP QUESTION BY PLAINTIFF AND FOUND HIM GUILTY. COUNSEL AND OFFICERS, SAID " YOU WAS SCREWED WITH NO GREASE. NO ONE COULD HAVE FOUND YOU GUILTY". CAPTAIN, DON'T LIKE YOU HE WENT OUT HIS WAY THAT TIME.

RECORDS AND TESTIMONY SHOWED: A) AD-SEG COMMITTEE KNEW TIME, DATE, WHO WAS INVOLVE, WHAT WAS SAID, WHERE THE INCIDENT OCCUR AND WHAT CHARGES WAS BEFORE IT ALLEGELY HAPPEN. B) SUTTON LIED AS TO WHY HE WAS AT HIS CELL. C) THAT VIDEO WAS DISPOSED PROOF OF INNOCENCE AND THREAT TO PLAINTIFF. D). THAT THE CASE WAS FALSE AND CONSPIRE.

108). Mr. Liggins, Denied Assistance on Appeal and Luker refuse review of Hearing tape for Appeal.

109). Sutton Had officer to write up a report that was false June 10, 2002. Plaintiff prove his innocence. Luker said "I am not Going to keep covering their asses, if they cant write it right and Dismissed the case." Sutton promise next time.

110. Jenkins Archarstrated a case 20020336578. Again excluded from Hearing. Guilty. Several more followed each level review.

111. Each Appeal Coordinator fail to investigate, review facts, witness or Evidence outside officer Evidence and statements. Plaintiff Appealed both steps.

112. Repetitious Confiscation of Legal supplies and material that accumulated, with each return missing some, destroyed, taken or given to Ragan who never returns it.

113. Disciplinary given to restrict Plaintiff's purchase of both Postage and writing supplies, and force him to use indigent supply process that monitor, controls and retaliate against litigation against officers or TDCJ, by denying adequate writing supplies limited to 25 sheets of paper aweek, not delivering but charge for supplies witholding time limitation mail to the court.

115. Level Disciplinary is use to limit supplies to $10.00 every two weeks for personal and legal writing material.

116. The warden disregarded all requests for additional Legal writing supply and postage purchase (warden Thaler)

117. Plaintiff purchase writing supplies through approved outside vendors after okayed and delivered, its confiscated given to Ragan and she refuse to return it.

118. TDCJ-ID do not provide copies access. Plaintiff had necessary copies sent from home of legal papers, Ms. Blackburn and Larpentuer discard it and say they return it to sender but family never get it back. They have open several legal mail from legal organizations and lawyers outside the presence of Plaintiff.

119. Ms Blackburn and Larpenteur create Impediments to Henders, Delays or Prevent weighing legal mail, Prevent legal mail to be Certified, withholding legal mail to be mailed and Delivered in Bulk, Refusing to Pick up legal mail and Deliver in ways That cause Damage to legal mail and will not respond to Request Concern legal mail necessities to Process it Through their mailroom, Causing many Disruption and Loss legal papers and Evidence.

120. Many of Plaintiff legal evidence, Grievances, Requests, Exhibits was Thrown away by Sutton, Jenkins, Blackburn, Larpenteur, and Ragan. Plaintiff Trial Stredagy, Insident Calendars, Law books was Taken for advantage to Defendant Defense.

121. Mr. Velasquez, Told Plaintiff Point Blank, That He would stop and Hender Grievances and Return un Process or Throw it away, and Did so many of Times.

122. Counda Denied Plaintiff the use of Extra Paging Citation to Litigate (10) Civil and Criminal Cases and only Allow use of (3) Cites Two to Three Times a week, Inadequate to Do Research in one Case let alone (6). He approved and Fasified investigate to Punishing without Hearing, Notice or Charge. He Further, Caused More of Plaintiff legal Material to be Confiscated on October 24, 2002, by Delaying Locker Box for legal Material for (6) Months, and Approve Arbitrary Discipline Punishment by His Clerks Ms Phibbs and Harrison,

123. Ms Phibbs, Arbitrarily Place Plaintiff on Law Books Restriction without Notice, Hearing, or Charge, on 2-11-02,

124. Frank Hoke, Punish Plaintiff with (60) Days Lawbook Restriction without Charge Hearing or Notice. He Approve of Unconstitutional Practicing Policy's of Limited Indigent Supplies.

125. Estelle High Security Ad Seg Committee unconstitutional and Arbitrary Deny All Inmate and Plaintiff to Attend or Defend Themselves in Their Punitive Hearings.

126. Healy, Told Plaintiff to Drop His Lawsuit and to stop Filing on People it will Just make it Worst on Himself. In Retaliation to Force Him to Drop suit and to not Pursue use of Force. He

PG-17

AND NURSES BEGAN TO USE MEDICAL CARE AS A PUNISHING TOOL.

127. IN JUNE OF 2002, PLAINTIFF CAUGHT FLU AND ASTHMA COM-PLICATION. HEALY, REFUSE ALL TREATMENT, AND MADE PLAINTIFF PAY A CO-PAYMENT FOR ASKING. FOR CARE.

128. HEALY, REVEL, BANKS, HARTNETT CABALLERO REFUSE TO TREAT ASTHMA ATTACKS.

129. PLAINTIFF DEVELOPED CYST AND BLEEDING EXTERNAL HEMORRHOIDS AT HIS RECTUM CANAL IN LATE JUNE, 2002, AND SEVERAL SICK CALLS AND VERBAL REQUEST FOR MEDICAL CARE WAS IGNORED, BY REVEL.

130. IN JULY OF 2002 THE CYST HAD GROWN AND INFECT HALF OF PLAINTIFF BUTTOCK ON LEFT-SIDE DEVELOPED A SOFT BALL NOT AND A SECOND GOLF BALL KNOTT BETWEEN ANAL AND GROWN WITH PROTRUDING HEMORRHOIDAL TISSUE IN EXCRUCIATING PAIN SO BAD HE WAS UNABLE TO MOVE, AND WAS ON THE FLOOR.

131. LT. HOOT, HAD OFFICER, PUT HIM IN CHAIR AND TAKEN TO THE INFIRMARY. MS. CABALLERO, SAID SHE IS NOT PROBING IN NOBODY'S IN THIS LIFE TIME, STOOD SIX FEET AWAY SAID," SHE DON'T SEE NOTHING AND NOT GOING TO TOUCH HIM". GAVE ASPRIN AND SAID SHE WILL SCHEDULE AN APPOINTMENT. PLAINTIFF COULD NOT SLEEP OR MOVE.

132. THE PAIN MULTIPLIED AND NO POSITION WAS RELIEF. THE FOLLOWING DAY OFFICERS CAME TO GET PLAINTIFF FOR MEDICAL WITH INSTRUCTION FROM HEALY, TO MAKE PLAINTIFF CRAWL AND GET IN CHAIR WITHOUT HELP IF HE CAN'T SAY HE REFUSED. (EVEN THOUGH OFFICERS WAS WILLING TO HELP). JENKINS AND CAPT. HUTCHISON MADE SURE IT WAS CARRIED OUT, KNOWING HE COULD NOT GET IN A CHAIR EVEN WITHOUT INJURY. HE WAS REFUSED.

133. THE SAME DAY IN THE EVENING AFTER CRYING, BEGGING, AND PLEADING FOR HELP FROM EVERY SUPERVISOR. LT. HOOT CALL SEVERAL TIMES TO REVEL. SHE TOLD HIM HE REFUSE CARE SHE DON'T WANT TO SEE OR TALK TO HIM. LT. HOOT SAID THERE'S NOTHING HE CAN DO.

134. PLAINTIFF, CRYING TOLD HOOT, HE WILL CUT HIMSELF SO HE CAN GET SENT SOMEWHERE HE CAN GET MEDICAL HELP, HIS PAIN WAS TOO

PG — 18

MUCH TO BEAR. HE SLASH HIS WRIST. REVEL WAS CALLED. HE HAD LOSS APPROX TWO PINTS OF BLOOD, ON HIS PARALYZED ARM.

135. REVEL CAME, LOOK AT PLAINTIFF THROUGH SMALL WINDOW AND SAID "NOT MUCH BLOOD, HE AINT BLED ENOUGH YET." LAUGHED AND LEFT. NEVER RETURNED.

136. OFFICER NORMAN IN DISAGREEMENT, LT. HOOT HAD DOOR OPEN AND NORMAN TORE A CELL-TOWEL MAKING A MAKE SHIFT BANDAGE TO SUPPRESS THE BLEEDING. OFFICERS HAD TO GO GET STRETCHER AND BOARD AND TAKEN TO INFIRMARY WHERE REVEL WAS SITTING AND EATTING REFRESHMENTS.

137. REVEL EXAMINE THE LACERATION, CALL DOCTOR AND SAID "ITS CUT TO THE SECOND SKIN." SHE SAID TO SGT. DUKE, "DOCTOR SAID SEND HIM TO HUNTSVILLE MEMORIAL HOSPITAL E.R." DUKE ASKED IS HE GOING BY AMBULANCE? SHE SAID, "HE AINT WORTH AN AMBULANCE RIDE, I'M SENDING HIM BY VAN."

138. SHE WARN PLAINTIFF DON'T NEVER BE CLOSE TO DEATH ON HER SHIFT. SAID SHE DON'T SEE NO CYST. THEN SAID SHE GOT FRIENDS, CALL SOMEONE AND IN-STRUCTED NOT TO TAKE HIM TO HOSPITAL BUT A MENTAL UNIT. THE LACERATION WAS NEVER CLOSED OR SEEN BY A DOCTOR.

139. A NURSE A JESTER PSYCHE UNIT SAW PLAINTIFF IN PAIN; SHE EXAMINE PLAINTIFF, IMMEDIATELY GOT PAIN, INFECTION, AND HEMORRHOID MEDICATION. WITHOUT COMING TO A HEAD THE CYST BURST THROUGH THE SKIN WITH BLACK PUS SHOOTING MORE THAN 6 FEET.

140. TWO WEEKS LATER PLAINTIFF WAS RETURN TO ESTELLE HIGH SECURITY UNIT STILL DRAINING INFECTION: NO MEDICAL PERSON EXAMINE PLAINTIFF OR CHANGE BANDAGE. MEDICATION WAS STOPPED WITHOUT SEEING HIM, HE WAS LEFT IN WHEELCHAIR, FORCE TO DEFICATE AND URINE ON FLOOR THAT BECAME INFESTED WITH MAGGOTS AND FLIES.

141. ON OCTOBER 24, 2002 ALL LEGAL PROPERTY WAS CONFISCATE AGAIN AS IMPROPER STORAGE AND NOT RETURNED AS OF YET.

142. DENIED CARE, SICK, IN MAGGOTS, LEFT IN WHEELCHAIR (2) YEARS, LOSS WEIGHT, HARRASSED, FECES OVER FLOOR, PLAINTIFF, OVERDOSE TO GET PROPER CARE. ALMOST DIE, PLACE IN I.C.U. DOCTORS REQUEST PLAINTIFF TO BE MOVED TO A MEDICAL AND HANDICAP AD SEG TO MEET HIS NEEDS, THE DOCTOR

SPECIALIST M.D. WAS TOLD HE WOULD BE SENT TO JESTER 3 HANDICAP MEDICAL AD SEG. AFTER RELEASE IT WAS DISREGARDED. HE WAS RETURN TO ESTELLE H.S. UNDER SAME CONDITION.

143. A DISCIPLINARY WAS GIVEN THE SAME DAY 12-19-03, FOR THROWING A FECES DIAPER OUT HIS CELL TO TRASH PILE (THE NORMAL WAY OF DISPOSING TRASH), BUT HIS ODD THROW DUE TO DISABILITY CAUSE THE FECES TO SEPARATE AND GET ON FOOD CART FRAME. MAD A FALSE DISCIPLINE WAS WROTE. AGAIN HE WAS EXCLUDED, WITH MR WRIGHT HELP. RAN A DISCIPLINARY HEARING ON A CASE THAT WAS NOT THE SAME GIVEN TO PLAINTIFF BUT WITH AN ADDED CHARGE STATING HE DESTROYED 66 TRAYS AND FOOD, (WHICH WAS NOT DESTROYED) NOR WAS 66 TRAYS ON IT). HE WAS FOUND GUILTY AND FIND #378.11. CAPT. LUKER SAID ON THE WING "NOW, YOU DON'T HAVE TO WORRY ABOUT PURCHASING LEGAL MATERIAL."

144. IN FEAR, AND MENTAL TORCHER IN MAGGOTS, FECES, HURT, SICK; THE PLAINTIFF OVERDOSE FOR CARE. ALMOST DIED, IN I.C.U. DOCTOR SPECIALIST MD. RECOMMENDED THIS TIME FOR TRANSFER OFF ESTELLE H.S. TO AN APPROPRIATE FACILITY, THE SAME DISREGARD. JANUARY 13, 2003

145. UNDER THE SAME CONDITION PLAINTIFF OVER DOSE. I.C.U. A TEAM OF OF SPECIALIST DOCTORS, THERAPIST, AND OTHERS EXAMINE PLAINTIFF. THIS TIME WROTE A MEDICAL ORDER THAT PLAINTIFF WAS TO BE RELEASE FROM A THE HOSPITAL TO A UNIT INFIRMARY WITH REHAB, AND GIVEN THERAPY AND HE IS TO BE TRANSFERRED BY AMBULANCE ONLY. 2-18-03

146. THIS WAS CIRCUMVENT BY DETOUR, SENT BY AMBULANCE TO JESTER 4 MISTREATED, AND SENT BACK TO ESTELLE H.S. BY VAN. WILL NOT LET HIM SEE DOCTOR. PUT UNDER SAME CONDITION.

147. PLAINTIFF, LAWSUITS IS IN JEAPARDY, HIS LIFE AND PHYSICAL HEALTH AND SAFTY IS IN DANGER. INMATES WHO ARE UNSKILL IN LAW AND WRITING IS WRITING FOR PLAINTIFF, BECAUSE HES DENIED HANDICAP WRITING DEVICES THAT WAS CONFISCATED WITHOUT CAUSE.

148. UNDER THREAT AND INTIMIDATION; THIS CLAIM ACTION WAS DROP BY MOTION FOR VOLUNTARY DISMISSAL PRIOR TO GRANTING OF I F P AND SERVICE OF THE DEFENDANTS, UNDER NUMBER H-02-4144. IT

WAS DISMISSED WITHOUT PREJUDICE. ← ATTENTION !!!

149. Sutton continue to threat and promised Plaintiff more disciplinaries, harrassments and punishments is forth coming.

150. ~~Def~~ Ragan, has promised the threat of destroying, or disposing Plaintiff property in her possession valued at over $1200.00 dollars, if he did not stop asking for it and filing grievance and for having lawsuit against her co-workers. (He was told that she already did through unverified source)

151. ~~~~ Revel, has given a direct and bold, threat, not only to deny medical care but that "if Plaintiff is close to death she would see to it he die." She has on many occassion did this during asthma attacks, denying care unless or until oxigen in blood level drop show (which means you are dying). Refusing treatment ~~during exposa~~ after being exposed to chemical agents.

152. ~~~~ Healy and Caballero continue with Revel to use Plaintiff medication and medical need, as punishing tool with records

153. ~~~~ Jenkins, Revel, Sutton, Biscamp and other expose Plain- to chemical agent indirectly from spraying other with no Dregards for Plaintiff medical condition.

154. ~~~~  NOTE! NOTE! NOTE!!! TO THE COURT: 1). This complaint is drafted by unskilled fellow inmates who are not lawyers, writ-writers, Jailhouse lawyers or paralegals, with lack of legal knowledge and writing skills. Only because of Plaintiffs writing handicap and the defendants confiscating and denying his only writing tool, does Plaintiff use them.        2). He refile these claims only cause someone agreed to pay for filing fee. 3).   The statements of facts is a lot broader with many details, dates, acts and events left out to shorten the complaint for filing and destroyed material. 4). Plaintiff, ask the court to liberally construe this complaint and not to limit-

His Claims and Cause of Action To The Unskill Writing, To The Written Statement of Facts, Events and Injuries. If The Court needs a more Detailed Statement of all Facts To Be Presented in This Case, Plaintiff will make all Effort To Provide

# CLAIMS

## THIRD CAUSE OF ACTION:

155) Defendants, Thaler, Simmons, McComb, Hutchison, Quada, Luker, Wright, Higgins, Biscamp, Jenkins, Jr., Sutton, Velasquez, Phipps, Harrison, Larpenter, Blackburn, Ragan, Revel, Mac Cartney, Banks, Healy, Dr. John Doe, Johnson, Robinson, Intentionally, Knowingly, and Maliciously, Retaliated Against The Plaintiff For: 1). Exercising His Access To Courts Rights., 2). Using The Grievance System Process Against TDCJ-Officials and Medical Officials.; 3). To Prevent or/and Delay Access To Courts and Administrative Remedies.; and 4). To Cover-up The illegal use of Force and Assault on Plaintiff by Sutton, Jenkins and Biscamp. In Violation of Plaintiff First Eight and Fourteenth Amendment Rights, That Denied Him Due Process of Law, Adequate Access and Means To Court and Subjected Him To Cruel and unusual Punishment, When:

156). A). Defendants wrote False Disciplinary Reports on The Plaintiff To: 1) Prevent His Purchase of writing Supplies and Postage For Legal use, From The Unit Commissary. 2). Force The Plaintiff on Limited-Controlled Legal Supplies Through Indigent Supplies Process., 3). To Keep Him In A Punitive Level-Custody Status. 4). To confiscate Property and Legal Property. 5). To

PREVENT THE RETURN OF PROPERTY AND LEGAL PROPERTY.   6) TO READ, STEAL, DESTROY, DISARRAY OR THROW AWAY LEGAL WORK.   7). TO CAUSE DELAY OR NON-COMPLIANCE IN LEGAL PROCEEDINGS.   8) TO CAUSE INADEQUATE SUPPLIES AND REPETITIOUS WRITING TO FRUSTRATE HELP.   9). TO TARNISH CHARACTER AND MAKE EASY TARGET. AND 10) AS A REVENGE TOOL.

157). DEFENDANTS PUNISHED PLAINTIFF WITH LAW BOOKS RESTRICTIONS, CONFICATION OF LEGAL WRITING SUPPLIES AND LEGAL MATERIAL WITHOUT NOTICE, CHARGE REPORT, HEARING OR THE MINIMUM DUE PROCESS OF LAW.

158). DEFENDANTS HELD BIAS AND ARBITRARY DISCIPLINARY HEARINGS ON KNOWN FALSE CHARGES IN ORDER TO INFLICT PUNISHMENT FOR THE PURPOSE TO CREATE IMPEDIMENTS ON ACCESS TO COURTS, AND PROTECT ILLEGAL ACTION OF OFFICERS.

159). DEFENDANTS USED THE AD SEG COMMITTEE PROCESS IN AN ARBITRARY MANNER TO GIVE PUNISHMENT THAT LIMITS LEGAL WRITING MATERIAL AND POSTAGE PURCHASES TO HENDER LEGAL ACTIVITIES.

160). DEFENDANT USED PHYSICAL FORCE TO BEAT, STAB, AND ASSAULT PLAINTIFF FOR STATING "HE WISH HIS JUDGE AND LAWYER COULD SEE HIS CONDITION" AFTER BEING THREATEN TO DROP SUIT AND STOP FILING GRIEVANCES

161). WHEN MEDICAL WHEELCHAIR CUSHION AND EGG-CREATE WAS THROWN AWAY TO CAUSE HARM AND PAIN AS AN INTIMIDATING METHOD.

162). LEFT IN FREEZING CELL WITHOUT BEDDING FOR APPROXIMATELY (10) DAYS.

163). DENYING INDIGENT SUPPLIES OF WRITING MATERIAL BUT CHARGING PLAINFF ACCOUNT FOR ORDER NOT RECEIVE.

164). DEFENDANTS CONSPIRED TO GIVE PLAINTIFF DISCIPLINARY ON FALSE

CHARGES AND EXCLUDE HIM FROM HEARINGS.

165). DEFENDANTS, CONSPIRED TO AND DID CHARGE OF #378.11, ON PLAINTIFF TRUST ACCOUNT ON A DISCIPLINARY HEARING REPORT THAT WAS SWITCHED AT A DISCIPLINARY HEARING THAT HE WAS NOT ALLOW TO ATTEND IN ORDER TO JUSTIFY THE FINE ON PLAINTIFF WITH BOGUS CHARGES FOR NOT DROPPING LAWSUIT OR STOP FILING GRIEVANCES.

167). DEFENDANT RAGAN THREATEN TO THROW PLAINTIFF PROPERTY AWAY (OVER $700.00) FOR REFUSE TO STOP FILING GRIEVANCES DROP SUITS AND SIGN SLIP STATING SHE GAVE PROPERTY SHE DESTROYED. HE TOLD SHE HAS ALREADY DESTROY IT BUT IS TRYING TO VERIFY.

168). DEFENDANTS USED PLAINTIFF HANDICAP DISABILITIES AND ONLY BE-CAUSE DEPRIVED HIM OF AND DENIED HIM ADEQUATE MEDICAL CARE AND TO GIVE HIM DISCIPLINARY REPORTS AND EXCLUDE HIM FROM DISCIPLINARY HEARINGS.

169). DEFENDANTS, FALSIFIED PLAINTIFF MEDICAL RECORDS AND MINIMIZED PLAINTIFF INJURIES AFTER THE ILLEGAL USE OF FORCE BY JENKINS, SUTTON AND BISCAMP, TO COVER UP THE ASSAULT LEAVING PLAINTIFF INJURED AND IN PAIN.

170). DEFENDANTS USED MEDICAL CARE, MEDICATION, MEDICAL NEEDS, MEDICAL AND HANDICAP DISABILITIES AND CONDITIONS, MEDICAL RECORDS AND MEDICAL POSITIONS OR AUTHORITY TO RETALIATE, PUNISH, INFLICT PAIN AND SUFFERING AND TARNISH PLAINTIFF'S MEDICAL HISTORY, MEDICAL RECORDS AND MEDICAL NEEDS AND CONDITION TO COVER-UP SECURITY AND MEDICAL STAFF ILLEGAL ABUSE.

171). DEFENDANTS USED THE GRIEVANCE PROCESS TO UPHOLD AS A RETALIATORY TOOL TO COVER-UP, UPHOLD, OR ASSIST IN THE ILLEGAL ACTS, ASSAULTS AND STEAL BY ITS OFFICER ON THE PLAINTIFF.

172). DEFENDANTS DISREGARDED DOCTORS ORDERS AND INITIATED A RETALIATORY TRANSFER TO A MENTAL HEALTH UNIT FOR PUNISHMENT RATHER THAN TO HOSPITAL FOR SERIOUSLY NEEDED MEDICAL TREATMENT FOR INJURIES AND CARE.

173). DEFENDANTS DEPRIVED PLAINTIFF ADEQUATE ACCESS TO U.S. MAIL CERTIFIED AND WEIGHING SERVICES FOR LEGAL ACTIVITIES.

174). DEFENDANTS, DENIED AND THROWED AWAY OR SENT BACK COPIES OF LEGAL WORK WITHOUT A PERALOGAL INTEREST AND TO HENDER COURT ACCESS.

175). DEFENDANTS, LEFT PLAINTIFF IN CELL WITH MAGGOTS, FECES, FLIES

PG-24

AND FORCE HIM TO KEEP MAGGOTS AND FECES FILL DIAPER IN CELL FOR REFUSING TO CEASE HIS LEGAL ACTIVITIES AGAINST THEM.

176). DEFENDANT RAGAN, GAVE WAY OVER A 100 STAMPS AND STAMPED ENVELOPES OF PLAINTIFF'S, THAT WAS SENT TO HER BY OFFICER HOLMES FROM THE HOSPITAL IN WHICH WAS LEFT IN PLAINTIFF PROPERTY IN HIS CARE AFTER TRANSFERRER FROM HOSPITAL BACK TO ESTELLE HI.SI. UNIT.

177). DEFENDANTS USED FEAR, INTIMIDATION, THREATS, FALSE REPORTS AND DISCIPLINARY TO FORCE HIM TO DROP HIS LAWSUIT H-02-4414, AND PLACED HIS MENTAL STABILITY, LIFE, AND WELL-BEING AND SAFTY IN TORMENT FEAR, JEAPARDY AND IN HARMSWAY TO DO SO.

178). DEFENDANTS MANIFESTED THEIR RETALIATORY THREATS AND PUNISHMENTS ARBITRARYLY, CAUSING INJURIES TO PLAINTIFF PHYSICALLY, MENTALLY, EMOTIONALLY AND MEDICALLY; AS WELL AS JEOPARDIZED ALL LITIGATION ACTIVITIES FOR EXERCISING HIS ACCESS TO COURT RIGHTS.

## FOURTH CAUSE OF ACTION:

179). DEFENDANTS WAS DELIBERATE INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL NEEDS, (DEFENDANTS HEALY, MAC CARTNEY, BANKS, REVEL, CABALLERO, MC COMB, DR. JOHN DOE, BOX), WHEN THEY WITH MALICIOUS INTENT, INTENTIONALLY AND KNOWINGLY DEPRIVED PLAINTIFF OF ADEQUATE MEDICAL CARE TO ADD ALTERRED HIS MEDIAL INJURIES, AND RECORDS TO COVER UP A RETALIATORY ILLEGAL ASSAULT BY OFFICERS AND TO INFLICT RETALIATORY PAIN AND PUNISHMENT FOR EXERCISING HIS ACCESS TO COURTS AND FREEDOM OF SPEECH RIGHTS SUBJECTING HIM TO CRUEL AND UNUSUAL PUNISHMENTS AND THE UNNECESSARY WANTON INFLICTION OF PAINS IN VIOLATION OF HIS FIRST, EIGHT AND FOURTEENTH AMENDMENT RIGHTS, WHEN:

180). 1. MAC COMB. INTERFERED WITH PLAINTIFF RECEIVING ADEQUATE MEDICAL CARE IN REQUEST THAT NURSE MAC CARTNEY, FALSIFY THE REASON FOR THE ILLEGAL ASSAULT HE ENGINEERED ON PLAINTIFF AND TO

MINIMIZE INJURIES TO CLEAR HIM (PLAINTIFF) FOR TRANSPORT.

181). DEFENDANT MAC CARTNEY, GAVE INADEQUATE MEDICAL TREATMENT AND MEDICAL EXAMINATION THAT AMOUNTED TO NO TREATMENT OR EXAMINATION AT ALL, AS A FAVOR TO SECURITY FRIENDS TO HELP COVER UP AN ILLEGAL ASSAULT USE OF FORCE.

182). DEFENDANT MAC CARTNEY, DENIED PLAINTIFF PAIN MEDICATION FOR HIS INJURIES, SUSTAINED IN THE ASSAULT AND TREATMENT FOR BACK AND NECK.

183). DEFENDANT BANKS REFUSED ~~TREATMENT~~ ADEQUATE TREATMENT AND CARE FOR SERIOUS INJURIES TO COVER FOR HER SUPERVISOR.

184). DEFENDANT, HEALY REFUSED ADEQUATE MEDICAL CARE TO PLAINTIFF AND USED THE DENIAL OR DELAY OF INADEQUATE CARE IN AN ATTEMPT TO FORCE PLAINTIFF TO STOP HIS LEGAL REMEDIES AND HELP COVER UP OFFICERS ASSAULT

185). DEFENDANT MAC CARTNEY PARTICIPATED TO CONSPIRE WITH OFFICERS IN MINIMIZE PLAINTIFF'S HANDICAP ABILITIES TO EXCLUDE HIM FROM HIS DISCIPLINARY HEARING TO STEAL HIS MONEY WITH A FINE ON A BOGUS CASE.

186). DEFENDANT CABALLERO REFUSE TO EXAMINE PLAINTIFF FOR BLEEDING EXTERNAL HEMORRHOIDS AND INFECTED CYST, ALLOWING IT TO EAT HIS FLESH.

187. ~~188~~. DEFENDANT REVEL, DENIED MEDICAL EXAMINATION AND CARE FOR INFECTED CYST AND EXTERNAL HEMORRHOIDS.

188). DEFENDANT REVEL, DISREGARDED AND IGNORED DOCTOR'S MEDICAL ORDERS TO SEND PLAINTIFF TO HOSPITAL FOR MEDICAL TREATMENT AND STITCHERS, DENIED ALL MEDICAL CARE AND SENT PLAINTIFF INSTEAD TO A MENTAL FACILITY FOR PUNISHMENT AND AS A RETALIATORY MEASURE FOR HIM FILING GRIEVANCE ON HER.

189). DEFENDANT REVEL, THREAT TO LET AND HELP HIM DIE IF PLAINTIFF COME TO CLINIC IN CRITICAL CONDITION ON HER SHIFT.

190). DEFENDANT REVEL, CALL IN FAVORS FROM OTHER MEDICAL OR PSYCHE-STAFF TO HELP HER DENY PLAINTIFF TO MEDICAL CARE AND SEND HIM TO A PSYCHE UNIT.

191). DEFENDANT REVEL LEFT PLAINTIFF ON FLOOR, BLEEDING WITH SERIOUS LACERATION AND BLEEDING BECAUSE SHE THOUGHT "HE HAD NOT BLED ENOUGH AND THAT HE SHOULD LOSE MORE" AS A PUNISHMENT DENYING HIM MEDICAL CARE,

192). HEALY, DENIED MEDICAL CARE FOR CYST, HEMORRHOID AND HIGH BLOOD PRESSURE bECAUSE PLAINTIFF COULD NOT CRAWL AND GET IN WHEEL-CHAIR ON HIS OWN, AND HIS ORDER TO WILLING OFFICERS WHO WANTED TO HELP PLAINTIFF TO NOT HELP HIM, MAKE HIM CRAWL AND IF HE DON'T REFUSED CARE.

193). DR. DOE AND HEALY, DENIED TREATMENT FOR BANDAGE CHANGE AND DRAINAGE FOR CYST, AND DR DOE, MAKING MEDICAL CHANGES AND NEVER SEEN OR EXAMINE PLAINTIFF.

194). HEALY, USES PLAINTIFF MEDICAL NEED AS A PUNISHING TOOL, TO HELP COVER UP OFFICERS ASSAULT AND TO INTIMIDATE PLAINTIFF FROM LEGAL ACTIVITIES.

195) REVGL AND CABALLERO, REFUSED CARE FOR ASTHMATIC DISTRESS AFTER ALLOWING OFFICERS TO EXPOSE HIM TO CHEMICAL AGENT THAT IS KNOWN TO AFFECT BREATHING.

196) HEALY PUT PLAINTIFF ON A (6) MONTH CATHETER RESTRICTION AS PUNISHMENT.

197) MS BOX, DR DOE, AND HEALY DISREGUARDED MEDICAL ORDERS TO PUT PLAINTIFF IN THE INFIRMARY HOSPITAL AND GIVE HIM REHAB THERAPY, AND KEPT HIM ON UNIT FOR PUNISHMENT AND CONTROL HIS LEGAL ACTIVITIES AND TO PREVENT CONTRADICTORY OF THEIR MEDICAL CARE.

## FIFTH CAUSE OF ACTION :

198). DEFENDANT DEPRIVED PLAINTIFF OF PROPERTY WITHOUT DUE PROCESS OF LAW FOR EXERCISING HIS LEGAL RIGHTS OF ACCESS TO COURT AND FREEDOM OF SPEECH, TO COVER-UP THE OFFICERS ILLEGAL USE OF FORCE ASSAULT, AND AS A RETALIATORY METHOD TO PREVENT LEGAL ACTIVITIES IN VIOLATION OF HIS FIRST AND FOURTEENTH AMENDMENT

199). MS. RAGAN, THREW AWAY AND/OR DENIED PLAINTIFF LEGAL & PERSONAL PROPERTY, WITHOUT NOTICE, HEARING, OR CHARGE IN THE AMOUNT OF OVER $700.00, AS A RETALIATORY METHOD TO STOP, HENDER, DELAY, PREVENT, OR FRUSTRATE PLAINTIFFS LEGAL ACTIVITIES, OR OBTAIN FAVORABLE POSITION.

200). MS. RAGAN, USED PLAINTIFF PERSONAL PROPERTY TO PAY-OFF

TDCJ-ID Debts To Other Inmates.

201). SGT. Sutton, threw away Plaintiff Personal Wheelchair Cushion and EBG-create Cushion, Worth $350.00.

202). SGT. Sutton. Capt. Luker, Mac Cartney, Sammy Wright, Biscamp and Gibson, Conspired to Concoct a False ~~Report~~ Disciplinary Report To Take Money, using Disciplinary Procedures from Plaintiff Trust Account or/and to Place Hold That would Prevent his Ability To Purchase Postage And Legal Writing Material, and To Control his Legal Activities by Fining him $378.11, without notice or minimal Due Process.

203). SGT Sutton and Biscamp Broke Plaintiff Wheelchair.

~~204) New Policy, After Approving Plaintiff's Subscription For~~

204). SGT. Sutton, Ragan, Biscamp, Jenkins and Capt. Hutchison, Conspired To Repetitiously Confiscate Plaintiff's Personal Legal Writing Supplies Purchased from An Outside Vendor and Deny its Return To Prevent Court Access and Legal Activities Against them, (9) Ream of Typing Paper, Over 300-Postage Stamps, 20+ Pens, 25- Legal Pads, approx. 150-Writ Envelopes 1500-Regular Envelopes and 75-Carbon Paper. And Harrison Taken Money For Indigent not Delivered.

## SIXTH CAUSED OF ACTION:

205). Defendants Blackburn, Larpentuer, Ragan, Sutton, Luker, Jenkins, Thaler, Robinson, Phipps, Quada, Harrison, Hoke, Hutchison, Wright, Mac Cartney, Revel, Healy, Biscamp, Velasquez intentionally, knowingly and maliciously Deprived Plaintiff Adequate Means of Access to Courts, And Free Speech As A Retaliatory Punishment For Exercising His Legal Right of Access To Court and Freedom of Speech In Violation of his First and Fourteenth Amendment When:

206) Defendant Larpentuer and Blackburn Open Legal Mail ~~tear~~

OF PLAINTIFF OUTSIDE OF PLAINTIFF'S PRESENCE FROM LAWYER AND LEGAL ORGANIZATIONS.

207. LARPENTLER AND BLACKBURN, FORCE INMATE/PLAINTIFF TO GIVE THEM LEGAL MAIL FOR WEIGHT FOR POSTAGE AND OR CERTIFIED MAIL WHICH IS KEPT FOR (3) DAYS TO WEEKS OR LOST, FORE RETURN.

208). LARPENTLER AND BLACKBURN, RETURN OR LOSE LEGAL COPIES FROM FAMILY FOR NO PENALOGICAL INTEREST OR REASON, EXCEPT TO INTERRUPT AND FRUSTRATE PLAINTIFF'S LEGAL ACTIVITIES AGAINST THEM.

209) LARPENTLER AND BLACKBURN, REFUSED TO PICK UP PLAINTIFF'S LEGAL MAIL.

210) LARPENTLER AND BLACKBURN, WITHOLDING LEGAL MAIL AND SUPPLIES FOR BULK-DELIVERY, TO DELAY COURT DEADLINES RESPONSES.

211). DEFENDANTS REPEATEDLY CONFISCATING LEGAL BOOKS, WRITING SUPPLIES AND MATERIAL TO PREVENT LEGAL ACTIVITIES.

212). DEFENDANTS PHIPPS, HOKE, QUADA, INTENTIONALLY AND MALICIOUSLY RE-STRICTED PLAINTIFF FROM USE OF ALL LAW LIBRARY BOOKS ACCESS FOR (60) DAYS TO STOP PLAINTIFFS LITIGATION, WITHOUT NOTICE, CHARGE OR HEARING.

213). DEFENDANT HARRISON. LIMIT PEN, PAPERS, AND ENVELOPE, DENYING ADEQUATE WRITING SUPPLIES FOR LEGAL PURPOSES.

214). DEFENDANT QUADA AND MS PHIPPS, DENIED A LEGAL BOX OR SPACE FOR (6) MONTH TO ALLOW REPETITIOUS TAKEN OF LEGAL PROPERTY TO ASSIST RETALIATORY ACTIONS BY OFFICERS

215). DEFENDANT QUADA HARRISON AND PHIPPS, DENIED REQUEST FOR ADDITIONAL LAW BOOKS, CITATIONS, AND RESEARCH MATERIAL IN AN ARBITRARY AND BLANKET DENIAL.

216). DEFENDANT THALER, DID DISREGARD ALL REQUEST FOR ~~POSTAGE~~ ADDITIONAL POSTAGE AND WRITING SUPPLIES FOR LEGAL PURPOSES.

217) DEFENDANT LUKER, WRIGHT, MAC CARTNEY, BISCAMP, SUTTON AND GIBSON CONSPIRE AND THROUGH FALSE DISCIPLINARY REPORT FINED PLAINTIFF #378.11 AGAINST HIS TRUST ~~ACCOUNT~~ THAT PREVENT HIS PURCHASE OF LEGAL WRITING SUPPLIES AND FORCE HIM TO USE INDIGENT TO CONTROL HIS LEGAL ACTIVITIES.

~~218).~~

218). Defendant Velasquez, used the Grievance Process To Prevent Administrative Remedies, To Help Stop, Delay, And Hender Litigation To Cover Up Officers Assault.

219) Defendant Rollin Robinson And Thaler, use The Grievance Process To Delay, Stop, or Prevent Administrative Remedies And Assist In Upholding Officer Illegal Conduct And Interference With Plaintiffs' Access To Courts.

220). When Healy, Revel And Mac Cartney used Medical Tool Care, Medication, Medical need, Medical And Handicap condition To Medically Disable Him Physically And Mentally To Communicate To Access Courts Through Others.

221) Defendants Instill Fear And Intimidation, Through Torcher, Abuse And Threats To Force Plaintiff To Drop Lawsuit # H-02-4414.

223). Defendant Stole Trial Stradegi' Notes, Research Notes, Theory Analysis, Discovery Stradegy And Application To Stages of Litigation notes And Pass iT Around To Those Involved, To Obtain Advantage of Defense For Each With Collective Allabies. (Stole Diaries with Dates, names, Events, and injuries)

224). Defendants Retaliated Against Plaintiff, Physically Assaulted Plaintiff With Beating And Place His well being in Harms way For Exercising His Rights Of Access To Courts.

## SEVENTH CAUSE OF ACTION :

225). Defendants Revel, Healy, Jenkins, Luker, Sutton, Biscamp, Ragan, Hutchison, Mc Comb, Mac Cartney And Simmons Discriminated Against Plaintiff's Handicap Disabilities As A Retaliatory Tool For Him Exercising His Access To Court And Freedom Of Speech Subjecting Him To Cruel And Unusual Punishment, Inhumane Conditions, Unsanitary Conditions, And Interference With His Access To Courts, Violating His Rights Under The ADA, RA, ~~~~~ Amendments When:

226). Plaintiff Inability To Get In And Out Of Wheelchair was Used To Retaliate And Deny Medical Care To Him.

227). Plaintiff Catheter Was Denied For (6) Months In A Retalia-

TORY MANNER FOR USING HIS ACCESS TO COURT.

228). DEFENDANTS EXCLUDED PLAINTIFF FROM HIS DISCIPLINARY HEARING BECAUSE OF HIS HANDICAP DISABILITIES.

229). DEFENDANTS GAVE CONCOCTED AND FALSE DISCIPLINARY REPORTS BECAUSE OF PLAINTIFFS HANDICAP.

230). DEFENDANTS FINED PLAINTIFF $378.11 BECAUSE OF HIS HANDICAP DISABILITIES, AND THREW AWAY HIS WHEELCHAIR CUSHION AND EGG-CREATE.

231). DEFENDANTS DENIED PLAINTIFF A SAFE, SANITARY AND HUMANE ENVIRONMENT BECAUSE OF HIS HANDICAP DISABILITIES.

232). DEFENDANTS DENIED AND DEPRIVED PLAINTIFF ACCESS TO MEDICAL ~~233). DEFENDANTS DENIED BE~~ CARE AND TREATMENT BECAUSE OF DISABILITIES.

233). DEFENDANTS DENIED AND DEPRIVED PLAINTIFF ADEQUATE MEANS OF ACCESS TO COURTS, ADMINISTRATIVE REMEDIES AND ACCESS TO COURT BECAUSE OF HIS HANDICAP DISABILITIES.

234). DEFENDANT DENIED AND DEPRIVED PLAINTIFF MENTAL STABILITY AND FEAR-FREE SANTUARY FROM ABUSE FROM OFFICERS BECAUSE OF HIS HANDICAP.

235). DEFENDANTS UNCONSTITUTIONAL POLICIES AND PRACTICES IMPLIMENTED ARBITRARY PUNISHMENTS TO PLAINTIFF BECAUSE OF HIS HANDICAP DISABILITIES.

## STATEMENT OF FACTS

236). ON DECEMBER OF 2002, AT THE CRMF-UNIT, PLAINTIFF HAD BEEN WEIGHED AND OFFICER THREATEN TO PUNISH HIM IN LIKE A SOLITARY ROOM. PLAINTIFF ASK TO SPEAK TO RANK. A SERGEANT JOHN DOE-5, CAME AND DID NOT WANT TO HEAR PLAINTIFF COMPLAINT, HE GRABBED PLAINTIFF AROUND THE NECK FROM BEHIND HIS WHEELCHAIR AND PULL BACK ENOUGH TO LIFT FRONT WHEELS OFF THE FLOOR FORCING PLAINTIFF THROUGH THE DOOR. THAN WITH GREAT FORCE; PUSHED PLAINTIFF FORWARD IN WHEELCHAIR INTO WALL SO HARD IT INJURED HIS FOOT AND BROKE FOOT REST HURTING KNEES.

THE SERGEANT TRIED TO COVER IT UP, REFUSE TO WRITE USE OF

FORCE REPORT OR DOCUMENT THE INCIDENT. PLAINTIFF REPORTED HIS INJURIES TO OFFICE OF GENERAL INSPECTION, AND AN INVESTIGATION WAS OPEN, WHO TRIED TO GET PLAINTIFF TO DROP THE COMPLAINT.

## EIGHT CAUSE OF ACTION :

237) DEFENDANT JOHN DOE - 5, INTENTIONALLY AND KNOWINGLY, USED UNNECESSARY AND EXCESSIVE USE OF FORCE ON PLAINTIFF WITH MALICIOUS AND SADISTIC INTENT AND PURPOSE TO CAUSE HARM RATHER THAN A GOOD FAITH FAITH EFFORT TO MAINTAIN SECURITY OR RESTORE DISCIPLINE CAUSING THE UNNECESSARY AND WANTON INFLICTION OF PAIN IN VIOLATION OF HIS 8TH AND 14TH AMENDMENTS RIGHTS WHEN!

238). DEFENDANT DOE-5, FORCEFULLY GRABBED PLAINTIFF AROUND THE NECK, PULLING HIS NECK BACKWARDS WITH BODY WEIGHT ON NECK ENOUGH TO RAISE WHEELCHAIR WHEELS OFF THE FLOOR CUTTING AIR OFF TO LUNGS AND HURTING HIS THROAT, THEN FORCING HIM THROUGH A DOOR IN A CELL HOLDING.

239). DEFENDANT DOE-5, FORCEFULLY, PUSHED PLAINTIFF AND HIS WHEELCHAIR INTO A CEMENT WALL CAUSING INJURIES AND BREAKING FOOT-REST ON WHEELCHAIR.

STATEMENT OF FACTS

## NINETH CAUSE OF ACTION :

240). DEFENDANT JANIE COCKRELL, ROBINSON, THALER, HOKE, QUADA, JOHNSON, RAGAN, JANE OR JOHN DOE - 3, TDCJ-ID AND UTMB/ CMHC; HAS POLICIES IMPLIMENTED, AND PRATICING POLICES THAT IS UNCONSTITUTIONALLY DEPRIVED PLAINTIFF MINIMAL DUE PROCESS OF LAW, EQUAL PROTECTION, ADEQUATE MEANS OF ACCESS TO COURT,

MEDICAL CARE:

241)

~~230~~). On MAY 1, 2003, A POLICY THAT PROHIBIT INMATE TO INMATE CORRESPONDCE CONCERNING LEGAL ISSUES, LEGAL ASSITANCE AND LEGAL ADVICE TO EACH OTHER UNLESS THEY ARE "PARTY TO THE SUIT OR WITNESS TO THE SUIT." THAT HAS DENIED PLAINTIFF AND SIMULAR-SITUATED INMATES ACCESS TO LEGAL ASSISTANCE AND DEPRIVE OF ADEQUATE ACCESS TO COURT.

242) ALSO IN THAT POLICY, ADULY PUBLICATION WITH POLITICAL VIEWS HAS BEEN BAND OR DENIED ALTOGETHER IN ARBITRARY PRACTICES OF LABELING ONE PAGE CLIP WORTH OF OFFENSIVE PICTURE OR WORDS THAT THE INMATE NEVER SEES OR TOLD WHAT EACTLY WAS THE OFFENSE IN A WAY THAT AN INMATE CAN MAKE A CHALLENGE TO THE BAND OR DENIAL, OR EVEN KNOW IF IT IS SUBJECTED TO AN OFFENSIVE LABEL, BECAUSE IT GENERALIZES WITH VAGUE INTERPRETATION OPEN FOR ARBITRARY DENIAL. EVERY ADULT MAGAZINE TDCJ-ID HAS FOUND BY PRACTICE HAS ATLEAST ONE PAGE THAT THEY CONSIDER ELIGIBLE FOR CLIPPING, SO IN TURN THE NEW POLICY DENYS ALL ADULT MAGAZINES THROUGH A "BLAKET POLICY" TO TEXAS INMATES.

243). FURTHER, MAGAZINES THAT WAS ALREADY APPROVED BY TDCJ-PRIOR TO THIS NEW POLICY WAS RETROACTIVELY IMPLIMENTED TO PAID SUBSCRIPTION THAT WAS ALREADY PAID FOR AND COMMENSED, WITHOUT ALTERNATIVE TO REIMBURSEMENT OR SUBSTITUTE FOR WHAT THEY APPROVE AND PERSONALLY MADE PAYMENTS TO THEMSELVES. DENYING FREE-SPEECH RIGHT TO PUBLICATION AND MINIMAL DUE PROCESS.

244). WARDEN THALER'S UNIT'S POLICIES AND PRACTICES THAT LIMITS AN INMATE PURCHASES OF LEGAL MATERIAL TO $10.00 EVERY TWO-WEEKS TO $-0- PURCHASE TO AD-SEG LEVEL-3 AND LEVEL-2 INMATES WITH NO ALTERNATIVE TO ADDITIONAL NEEDED SUPPLIES THROUGH PRACTICES OF ARBITRARY BLANKET DENIALS, TO PLAINTIFF.

245). TDCJ-ID NEW POLICY IMPLIMENTED, THAT LIMIT PURCHASE OF POSTAGES TO ALL INMATES AND PLAINTIFF TO $(30) EVERY TWO WEEKS AND HAS NO PENALOGICAL INTEREST, WHEN A LEVEL-1. THAT ONLY IMPEDES

An inmates access to court means and no other purposes.

246). WARDEN THALER, PRACTICING UNIT POLICIES THAT ALLOWS THE AD-SEG COMMITTEE TO HOLD ARBITRARY DISCIPLINARY HEARINGS THAT INFLICTS PUNISHMENTS ON PLAINTIFF ON UNCONVICTED CHARGES AND BE-NOTICE AND HEARING IS CONDUCTED PRIOR TO DISCIPLINARY FINDINGS.

247). WARDEN THALER, UNIT PRACTICING - POLICIES THAT PROHIBITED PLAINTIFF AND ALL INMATES TO RECIEVE NOTICE, PRESENT STATEMENTS, WITNESSES, OR DOCUMENT EVIDENCE IN HIS BEHAVE OR DEFENSE OR ATTEND THE AD-SEG PUNITIVE HEARINGS THROUGH "BLANKET DENIALS" PRIOR TO CON-VICTION OR DISCIPLINARY HEARING; AND ALLOW ITS DECISION TO BE BASED ONLY ON THE OFFICERS REPORT OF ACCUSATION.

248). WARDEN THALERS - UNIT PRACTICING POLICY OF ALLOWING THE ARBITRARY EXTENSION OF PUNISHMENT THROUGH OFFICERS BULK DISTRIBUTION (I.E. DISCIPLINARY GIVES (15)DAY PROPERTY RESTRICTION THAT ENDS ON 4-15-03 HOWEVER PROPERTY IS WITHELD BECAUSE THE OFFICER ONLY PASS OUT ON THURDAYS IT TAKES UNTIL 5-1-03 TO RECEIVE IT WHICH IS ANOTHER (17) UNDOCUMENTED DAYS PROPERTY RESTRICTIONS. UPGRADE INTERVIEWS, COMMISSARY RESTRICTION ECT... IS THE SAME, IN PLAINTIFFS CASE.

249). RAGAN'S, PRACTICING POLICY OF GIVING ARBITRARY PUNISHMENTS OF EXTRA - RESTRICTION WITHOUT NOTICE HEARING OR CHARGE. HER ARBITRARY AND RETALIATORY PUNISHMENTS OF STEALING, DESTROYING, WITHOLDING, GIVING AWAY OR ALTERRING PLAINTIFF/INMATES PERSONAL PROPERTY AS A RETALIATORY OR CORRECTIVE PUNITIVE MEASURES

250). UNIT PRACTICING POLICIES OF USING NON-RELATED LEGAL MATERIAL PUNITIVE CONFISCATION AND RESTRICTION FOR UNRELATED DISCIPLI-NARY INCIDENTS, IN PLAINTIFFS CASE

251). QUADA'S UNIT PRACTICING-POLICY OF ARBITRARY AND BLANKET DENIAL OF ADDITIONAL LAW RESEARCH AND CITATION CASES IN EMERGENCY AND MUTIPLE LITIGATION OF SEVERAL CASES, TO PLAINTIFF

252). QUADA'S UNIT PRACTICING POLICY OF ALLOWING OFFICERS CLERKS USE LEGAL MATERIAL AND SUPPLIES TO CONTROL LEGAL ACTIVITIES AND ACCESS TO COURT.

253). QUADA AND HOKE'S, PRACTICING POLICY THAT ALLOWS OFFICER'S

CLERKS TO ARBITRARILY INFLICT PUNISHMENTS ON PLAINTIFFS' LAW LIBRARY PRIVILGES WITHOUT NOTICE, HEARING, CHARGE OR A CONVICTION OR THE MINI- MAL DUE PROCESS OF LAW AS A REVENGE, RETALIATORY, AND COVER-UP METHOD TO STOP, FRUSTRATE OR INTIMIDATE LITIGATION AGAINST OFFICERS WRONGFUL ACTS.

254). TDCJ-ID PRACTICING POLICY OF USING AND ALLOWING THE USE OF THE DISCIPLINARY PROCESS TO USE ACCESS TO LEGAL WRITING POSTAGE, PAPERS, ENVELOPES AND WRITING TOOLS AS A RESTRICTED PUNISHING TOOL.

255). TDCJ-ID POLICY AND PRACTICE OF USING THE INDIGENT INMATE RESTRICTIVE SUPPLIES PROCESS AS A PUNISHING TOOL AGAINST NON- INDIGENT INMATES (AND PLAINTIFF), TO CONTROL LEGAL ACTIVITIES AND TO GAIN ADVANTAGE IN LITIGATION AGAINST TDCJ-OFFICIALS.

256). WARDEN THALER UNIT-PRACTICING POLICY OF USING CONFISCATION POLICIES TO STEAL, DISARRAY OR DESTROY LEGAL WORK AND MATERIAL OF INMATES TO GAIN ADVANTAGE IN LITIGATIONS AGAINST TDCJ-OFFICIALS.

257). TDCJ-ID PRACTICE AND POLICY, OF EVERY 2 TO 3 DAY MANDATORY CELL-SHAKE DOWN OF AD-SEG INMATES WHO ARE LOCKED UP (24) HOURS A DAY AND SHOOK-DOWN EACH TIME THEY LEAVE OR RETURN TO CELL IN ADDITION TO BEING SHOOK-DOWN EVERY (3) DAYS AS A MENTAL TORCHER TECHNIC, OF HARRASS.

258). TDCJ-ID POLICY AND GRIEVANCE POLICIES, THAT PREVENTS FEDERAL AND STATE COURTS ACCESS WITH IMPLIMENTED UNCONSTITUTIONAL IMPEDI- MENTS THAT DENIES AND PREVENTS MANDATORY EXHAUSTION OF ADMINI- STRATIVE REMEDIES AND ISSUES REQUIRED TO ACCESS THE COURTS UNDER PLRA. TO LITIGATE UNCONSTITUTIONAL ISSUES, BY NOT ALLOWING INMATES AND LIMITING THEM TO FILING ONE GRIEVANCE ONE TIME EVERY SEVEN DAYS ONLY AND CAN PRESENT ONLY ONE ISSUE PER GRIEVANCE NO MATTER HOW MANY ISSUES IN AN INCIDENT, OR HOW MANY INCIDENTS HAPPEN IN A ONE OR SEVEN DAY PERIOD, CAUSING TIME EXPIRATION OF (15) DAY FILING PERIOD TO PAST BECAUSE ONLY TWO ISSUES OR INCIDENT CAN BE FILED IN (15) DAYS.

259). TDCJ-ID GRIEVANCE PRACTICING POLICIES AND POLICY THAT PREVENTS AND DENYS AN INMATE ACCESS TO ADMINISTRATIVE REMEDIES AS IN- INCIDENTS AND ISSUES HAPPENS, WHILE EVIDENCE ARE FRESH.

260). WARDEN THALER'S PRACTICING POLICY OF ALLOWING THE UNIT'S GRIEVANCE PROCESS TO BE USED TO COVER-UP AND ASSIST OFFICERS

ILLEGAL ACTS AND UNCONSTITUTIONAL ACTS AGAINST INMATES SO THAT THE PRACTICE MAY SAFELY CONTINUE WITHOUT INTERRUPTION OR CONSEQUENCES TO TO OFFICERS COMMITTING THE UNCONSTITUTIONAL ACT.

261). WARDEN THALER'S, PRACTICES POLICY OF USING, CONDONING, AND SUPPORTING GRIEVANCE PRACTICE OF BEING USE TO GAIN ADVANTAGE IN INMATES V. TDCJ OFFICIALS LITIGATION, AND ASSISTING TO UPHOLD ACT AND IMPEDIMENTS TO THAT PREVENTS ADEQUATE MEANS AND ACCESS TO COURTS OR THAT HENDERS OR CAUSE DELAY IN LEGAL ACTIVITIES.

262). THALER'S UNIT PRACTICING POLICY THAT ALLOWS LEGAL WORK OR COPIES OF LEGAL-WORK AND PAPERS TO BE DENIED, RETURN TO SENDER OR/AND INTENTIONAL LOST OF LEGAL WORK OR COPIES SENT TO AN INMATE FROM FAMILY OR FRIENDS WHEN THE INMATE HAD NOT SENT A REQUEST PRIOR TO LEGAL WORK BEING SENT, SAYING ITS COMING OR AND WHO IS SENDING THE LEGAL WORK EVEN IF THE INMATE DON'T KNOW WHAT IS SENT UNTIL HE GETS IT. THE PROCESS AND DENIAL HAS NO PENOLOGICAL INTEREST IS EXCEPT TO INTERFERE WITH INMATE LITIGATION AND ACCESS TO COURT AND TO PREVENT ACCESS TO LEGAL WORK BEING COPIED FOR INMATES.

263). THALER'S UNIT PRACTICING POLICY OF ALLOWING OFFICERS AND CAPT. LUKER, TO USE FALSE DISCIPLINARY REPORTS AND THE DISCIPLINARY PROCESS AS A RETALIATORY TOOL AGAINST INMATES FOR THEIR FILING COMPLAINT AGAINST OFFICERS AND TO STOP OR INTIMIDATE LEGAL ACTIVITIES.

264). TDCJ-ID USING PRACTICES OF TRANSFERRING HANDICAP INMATES TO NON-HANDICAP SUPER-SEG UNIT, AS PUNISHMENT FOR THEIR LEGAL ACTIVITIES AND EXERCISING RIGHTS OF ACCESS TO COURT.

265). UTMB/CMHC POLICIES AND PRACTICING POLICIES THAT: (1) USING MEDICAL CARE, TREATMENT, RECORDS, CONDITION AND SERIOUS MEDICAL AND HANDICAP NEEDS AS PUNISHING TOOLS TO INTIMIDATE LEGAL ACTIVITIES RATHER THAN ITS INTENDED PURPOSE. (2) ASSIST IN UNCONSTITUTIONAL TRANSFERS AND PUNISHMENT USING MEDICAL RECORDS, TREATMENT AND CONDITION IN RETALIATORY PRACTICE AND COVER-UPS. (3) ALLOWS SERIOUS CHRONIC ILL-INMATES AND SERIOUS HANDICAP INMATES TO BE HOUSE CONTRARY TO MEDICAL CLASSIFICATION. AND (4) ALLOWING UNIT TO UNIT PHYSICIANS AND PHYSICIAN ASSISTANCE TO NOT HONOR EACH OTHERS PASSES, TREATMENTS AND RECOMMENDATIONS.

266). EACH OF THE UNCONSTITUTIONAL PRACTICES OR/AND POLICIES

HAS BEEN INFLICTED ON PLAINTIFF AND SUBJECTED HIM TO ITS PUNI-
TIVE PUNISHMENTS VIOLATING HIS FEDERAL PROTECTED RIGHTS AND
VIOLATES THE CONSTITUTION OF THE UNITED STATES ON ITS FACE AND
IMPLIMENTATION, OF THE ADA, RA, 1ST, 8TH AND 14TH AMENDMENTS.

## RELIEF REQUESTED

267).
~~268).~~ WHEREFORE, PLAINTIFF RESPECTFULLY PRAYS THAT THE COURT
ENTER JUDGMENT GRANTING PLAINTIFF AS RELIEF AS FOLLOWING :

268).(A) ISSUE A DECLARATORY JUDGMENT - THAT THE DEFENDANTS
ACTS, POLICIES, AND PRACTICES DECRIBED IN #241 THRU #266 AND
COMMITTED AGAINST THE PLAINTIFF VIOLATES THE CONSTITUTION OF THE
UNITED STATES AND HIS RIGHTS UNDER THEM.

269).(B) ISSUE A PRELIMINARY AND PERMANENT INJUNCTION - WHICH-:

(1). PROHIBITS THE DEFENDANTS, THEIR SUCCESSOR IN OFFICE, AGENTS,
EMPLOYEES AND THOSE WORKING IN CONCERT AND PARTICIPATION WITH THEM
FROM HARRASSING, THREATENING, PUNISHING OR RETALIATING IN ANY WAY AGAINST
AND PLAINTIFF BECAUSE HE FILE THIS ACTION OR FOR EXERCISING HIS ACCESS
TO COURTS AND ADMINISTRATIVE REMEDIES RIGHTS.

(2). PROHIBITS THE DEFENDANTS, THEIR SUCCESSOR IN OFFICE, AGENTS,
EMPLOYEES AND ALL OTHER PERSONS IN ACTIVE CONCERT AND PARTICIPATION
WITH THEM FROM HOUSING OR TRANSFERRING PLAINTIFF ON NON-HANDICAP
UNITS CONTRARY TO HIS MEDICAL CLASSIFICATION OR IN RETALIATION FOR FILING
THIS COMPLAINT.

(3) PROHIBITS THE DEFENDANTS FROM TAKING, PLACING HOLD ON OR
STOPING USE OF HIS ACCOUNT AND REMOVE HOLD ON THE $378.11 FINE
THAT RESULTED FROM A RETALIATORY AND CONCOCTED DISCIPLINARY RE
PORT #                , FOR EXERCISING HIS ACCESS TO COURTS RIGHTS
AND BECAUSE OF HIS DISABILITIES; UNTILL THE COURT HAS MADE A FINDING.

(4) PROHIBIT THE DEFENDANTS, THEIR SUCCESSORS, EMPLOYEES AND ANYONE
ACTING IN CONCERT OR PARTICIPATING WITH THEM FROM CONFISCATING
THE PERSONAL LEGAL PLEADINGS, LAW BOOKS, WRITING SUPPLIES OR HANDICAP
DEVICES OF THE PLAINTIFF'S.

(5). Prohibit the Defendants, Successor in Office, Agents, Employees, and Anyone Acting in Concert or Partjcipation with from Using any of or part of a Policy or Practice herein that is unconstitutionally in its Implimentation or impedes on Constitutional Rights.

(6) Prohibit Property Room Officer Jennifer Ragan from Destroying, Alter, or Throwing Away Plaintiffs' Personal and Legal Property in her Possession.

(7). Prohibit the Defendants, Their Successors, Agents, Employees and Anyone Acting in Concert with them from Using Plaintiff medical records, conditions, Treatments, Care, Position and/or Medical and Handicap needs as a Punishing Tool or Retaliatory Tool for Exercising his Constitutional and Access To Court Rights.

(8) Order the Defendants, and Agents, to follow the (5) M.D. Specialist Doctors and Therapist, Medical Orders Issued on February 24, 2002, to House Plaintiff in an Unit Infirmary Hospital that have Rehab and to give Therapy.

(9) Order Defendants and Agents to Assist Plaintiff in obtaining Water, Shower (that he havent had in (2) months) change of Clothes and Transfer to Bed, And Daily Remove all Contaminated Diapers from Cell until Transferred to a Unit Infirmary Hospital.

(10) Order Defendants to Remove all Retaliatory Harmful Information from Plaintiffs Medical Records that Resulted from the any of the Defendants Retanatory Act(s) or Cover-ups,

(11) Order Expunged all Disciplinary Case Reports from February 11, 2002 until May of 2003, from Plaintiff's Records.

---

270. (C) Grant Compensatory Damages in the following Amounts from each Defendant in their individual Capacitys.

1). Defendant Biscamp - $300,000.00 Against him

~~2) $300,000.00 Against Jenkins Jr.~~

PG-38.

2). $300,000.°° AGAINST DEFENDANT JENKINS, JR.

3). $300,000°° AGAINST DEFENDANT DARRELL SUTTON

4). $300,000.°° AGAINST DEFENDANT MC COMB

5). $300,000.°° AGAINST DEFENDANT RAGAN

6). $300,000.°° AGAINST DEFENDANT LUKER

7). $300,000.°° AGAINST DEFENDANT THALER

8). $300,000.°° AGAINST DEFENDANT SIMMONS

9). $300,000.°° AGAINST DEFENDANT HUTCHISON

10). $300,000.°° AGAINST DEFENDANT MAC McCARTNEY

11). $200,000.°° AGAINST DEFENDANT WRIGHT

12). $50,000.°° AGAINST DEFENDANT LIGGINS

13). $100,000.°° AGAINST DEFENDANT QUADA

14). $30,000.°° AGAINST DEFENDANT PHIPPS

15). $30,000.°° AGAINST DEFENDANT HARRISON

16). $20,000.°° AGAINST DEFENDANT BLACKBURN

17). $20,000.°° AGAINST DEFENDANT LARPENTUER

18). $300,000.°° AGAINST DEFENDANT REVEL

19). $50,000.°° AGAINST DEFENDANT CABALLERO

20). $10,000.°° AGAINST DEFENDANT BANKS

21). $25,000.°° AGAINST DEFENDANT HOKE

22). $25,000.°° AGAINST DEFENDANT Robinson

23). $500,000.°° AGAINST DEFENDANT HEALY

24). $50,000.°° AGAINST DEFENDANT BOX

25). $15,000.°° AGAINST DEFENDANT DOE-1

26). $15,000.°° AGAINST DEFENDANT DOE-2

27). $100,000.°°° AGAINST DEFENDANT DOE-3

28). $275,000.°° AGAINST DEFENDANT DOE-4

29). $200,000.°° AGAINST DEFENDANT DOE-5

30). $100,000.°° AGAINST DEFENDANT JOHNSON

31). $100,000.°° AGAINST DEFENDANT COCKRELL

271. D. GRANT COMPENSATORY DAMAGES IN THE FOLLOWING AMOUNTS FROM EACH DEFENDANT IN THEIR OFFICIAL CAPACITIES:

   1). TDCJ-ID $250,000.°° AGAINST DEFENDANT Cockrell and TDCJ-ID

   2). $250,000.°° AGAINST DEFENDANT DOE-3 and UTMB/CMHC

   3) $250,000.°° AGAINST DEFENDANT THALER

   4) $100,000.°° AGAINST DEFENDANT BOX

   5) $100,000.°° AGAINST DEFENDANT HOKG

   6) $100,000.°° AGAINST DEFENDANT JOHNSON.

272. E. GRANT PUNITIVE DAMAGE OF $5,000,000.°° AGAINST DEFENDANTS

273. F. GRANT MENTAL AND EMOTIONAL DAMAGES

274. G. GRANT ATTORNEY FEES AND COST OF LAWSUIT.

275. H. GRANT ACTUAL DAMAGES OF $1,500.00 FROM DEFENDANT RAGAN

276. I. GRANT SUCH OTHER RELIEF AS THIS COURT DEEMS JUST, PROPER AND EQUITABLE IN WHICH PLAINTIFF IS ENTITLE.

277. J. JURY DEMANDED ON ALL ISSUES TRIABLE BY JURY

SIGNED THIS ~~MAY~~ JUNE 30, 2003

RESPECTFULLY SUBMITTED

ARCADE JOSEPH COMEAUX, SR # 841331
ESTELLE H. S. UNIT
264 FM 3478
HUNTSVILLE  TEXAS 77320-3322

## PLAINTIFF'S DECLARATION

278. I DECLARE UNDER PENALTY OF PERJURY ALL FACTS PRESENTED IN THIS COMPLAINT AND ATTACHMENTS THERETO ARE TRUE AND CORRECT.

EXECUTE: ~~MAY~~ JUNE 30, 2003.

ARCADE JOSEPH COMEAUX JR
PLAINTIFF

PG~ 40